# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 2, 1909.

WILLIAM F. DOWNS
VS.
SHERLOCK SWANN ET AL.

*Harry B. Wolf* for plaintiff.
*Alonzo L. Miles* for. defendant.

HEUISLER, J.—

Gentlemen, inasmuch as I fully realized the extreme importance of this proceeding, both from the standpoint of the plaintiff and respondents, I examined carefully all the authorities that have been submitted to me, both by Mr. Miles and Mr. Wolf since yesterday.

I examined Tiedeman and the Louisiana cases, and indeed went further than that and found a decision of the Supreme Court for the District of Columbia by Chief Justice Alvey, to which reference will probably be made later on.

In this bill of complaint filed on March 31st, last, by the petitioner, it was alleged that the complainant was

under arrest in the City of Baltimore charged with the embezzlement of one thousand dollars, the property of the Mayor and City Council of Baltimore, and that up until the time of his arrest he had been a clerk in the office of City Register of Baltimore City.

It further appeared from the bill that no preliminary hearing of said alleged charge had been had before the proper official at the time of the filing of the said bill.

It was further charged that the respondents in said bill, following the custom and practice of the police department of Baltimore City had indicated their purpose and intention immediately after the preliminary hearing before the magistrate, and in advance of his trial upon the alleged charge of embezzlement in the tribunal having jurisdiction over the offense," to photograph the said petitioner and preserve said photograph for the use of said department, and to subject him to the tests of the "Bourtilion System" in use in said department in violation of his right of personal liberty, and without due process of law as guaranteed by the Constitution of the United States, and the Bill of Rights of the State of Maryland.

Upon that state of facts the injunction was issued as prayed, with leave to the respondents to move for the dissolution thereof after answer filed.

A joint answer was promptly filed by the defendants in which, among other things, it was admitted that it was their purpose to take the photograph of the said complainant and apply the tests of the "Bourtilion System,"—because said proceeding in "the case of prisoners charged with felony or other heinous crimes" is, "necessary to the proper enforcement of police regulations and the securing of the prisoner for trial; that a full description of him should be had in order that, if he should undertake to become a fugitive from justice, the police and detective departments may be in possession of such information as will enable them to have him identified, when followed, wherever he may be found."

Further answering, the respondents say that, contrary to the allegations of the bill of complaint, "it is not the practice of the defendants to publish the photograph of a prisoner who has been arrested upon the first offense, nor to place it among the photographs of well-known and established criminals until and unless the prisoner whose photograph has been taken has been either convicted or has undertaken to escape and avoid the payment of his bail; and such was not, and is not, the purpose of the defendants with reference to the plaintiff in this case."

The answer further alleges that on preliminary hearing, the said plaintiff was released on bail on the charge referred to in the bill of complaint and that shortly thereafter he was again arrested on additional charges and was at the time of the filing of answer, confined in the Central Police Station in the City of Baltimore.

Defendants having answered, moved for a dissolution of the injunction.

That the right of personal liberty and due process of law are guaranteed to everyone by the Constitution of our common country and of the several States, and that its improper invasion should be vigorously protested by the popular voice and enjoined and restrained by legal tribunals, is fundamental.

On the other hand, that there should be no impeding restrictions in the way of the proper exercise of the police power and regulation is necessary for the protection and safety of the community; and the limitations of the police power have been extended by the courts fully and freely with these two grave and important considerations, always are clearly born in mind.

They are presented in sharp contrast in the pending controversy. The charge is made that without warrant of law and in violation of constitutional rights the police authorities propose, by force of private procedure, to subject to photographing and measurement a prisoner under charge of crime, but not yet convicted, and who is panoplied by the presumption of innocence, and that thereafter they will permit the publication of such photographing and measuring, and will preserve the results among the "photographs of well known and established criminals" without reference to the ultimate determination of the case.

If this were indeed so, as charged, it would distinctly shock the sensibilities of all free men and reduce to an absurdity the cherished idea that "all men who are charged with crime are

presumed to be innocent until they are proven to be guilty," and it would not in any manner be justified by any claim of proper police power.

The charge, however, in this case, is distinctly controverted and denied, and the purpose of the proceeding is clearly announced in the hereinbefore recited extracts from the answer of the defendants.

In my mind, there can be no doubt that the methods of police work, concretely known as the "Bourtilion System," when applied by the local force, as stated in the said answer, is a reasonable, proper, intelligent and necessary exercise of police power, and not an invasion of personal rights and privileges, as alleged, or as it was more succinctly stated by Chief Justice Alvey, in the case of Schaefer vs. The United States, reported in 24 District of Columbia Appeals, page 426: "It is one of the usual means employed in the public service of the country, and it would be matter of regret to have its use unduly restricted upon any fanciful theory or constitutional privilege."

The public information on the subject of this procedure, as I am informed, has therefore been meager and unsatisfactory and the present discussion of it is, in my judgment, beneficial.

An order will be signed rescinding the order of March 31st, 1909, dissolving the injunction heretofore granted and dismissing the bill of complaint with costs.